389 Mass. 399    399

South Hadley v. Director of the Division of Employment Security.

TOWN OF SOUTH HADLEY & another[1] vs. DIRECTOR OF THE
DIVISION OF EMPLOYMENT SECURITY & another.[2]

Hampshire. March 10, 1983. — June 9, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Employment Security*, Eligibility for benefits, Teacher.

In the circumstances, a tenured public school teacher who was under a
contract of employment extending from September 1 to August 31,
and who was notified on June 4 by the municipal school committee
that it had voted to lay her off, effective September 1, was eligible to
receive unemployment compensation benefits under G. L. c. 151A
during the period from June 23, the last day of the school year,
through August 31. [401-403]

CIVIL ACTION commenced in the Hampshire Division of
the District Court Department on October 26, 1981.

The case was heard by *Morse*, J.

*Albert R. Mason* for the plaintiffs.

*Ann Clarke* for Lynn S. Fitzgerald.

*George J. Mahanna*, Assistant Attorney General, for
Director of the Division of Employment Security, was pres-
ent but did not argue.

WILKINS, J.   In the spring of 1981, the South Hadley
school committee gave notice to Lynn S. Fitzgerald, a
tenured teacher, that she was laid off, effective September
1, 1981, because of a reduction in the town's budget.   A
judge of the Hampshire Division of the District Court
Department affirmed a decision of the Division of Employ-
ment Security concluding that Fitzgerald was entitled to
unemployment compensation, if otherwise eligible, from

---

[1] The school committee of South Hadley.   We shall refer to the plain-
tiffs collectively as the school committee.

[2] Lynn S. Fitzgerald.

the date she last worked (June 23, 1981) until August 31, 1981. The town contends that under the collective bargaining agreement the school year extended through August 31, 1981, that Fitzgerald was on vacation from June 23, 1981, through August 31, 1981, and that, because she could have received medical and hospital insurance coverage during the summer months and could have received her annual salary in twenty-six equal biweekly instalments, she was ineligible for unemployment compensation benefits during the period in issue. We agree with the judge and the Division of Employment Security that Fitzgerald was not ineligible for unemployment compensation benefits during the period from June 23, 1981, through August 31, 1981.

On June 4, 1981, the school committee notified Fitzgerald that it had voted to lay her off, effective September 1, 1981. As defined in the collective bargaining agreement, the school year ran from September 1 through August 31, and included 185 pupil days and 4 teacher days to be scheduled between September 1 and June 30. Salary was to be paid in twenty-six equal biweekly instalments, unless the teacher elected to be paid in twenty-one equal biweekly instalments. The record does not show whether Fitzgerald elected to be paid in twenty-one instalments, although it may be inferred from the briefs that she did. The school committee agreed to make hospital and medical insurance available and to pay 60% of the cost of the coverage throughout the calendar year. The hearing officer made no finding whether Fitzgerald elected such coverage. She testified that she did not.

Fitzgerald's last day of employment was June 23, 1981. She had no obligation to her employer thereafter. It was possible that Fitzgerald might have been recalled, but the review examiner found that she had no reasonable assurance of reemployment for the next school year. The hearing officer noted G. L. c. 71, § 40, as appearing in St. 1979, c. 717, § 4, which provides that "[t]he compensation paid to [public day school] teachers shall be deemed to be fully earned at the end of the school year, and proportionately

389 Mass. 399                                    401

South Hadley *v.* Director of the Division of Employment Security.

earned during the school year."[3]   He concluded that Fitz-
gerald was in "total unemployment" as defined by G. L.
c. 151A, § 1(*r*)(2), and entitled to benefits from June 23
through August 31, 1981, if otherwise eligible.

To be eligible for benefits a person must be in total or par-
tial unemployment. G. L. c. 151A, § 24(*c*); *id.* § 1(*r*). An
individual is "deemed to be in total unemployment in any
week in which he performs no wage-earning services what-
ever, and for which he receives no remuneration, and in
which, though capable of and available for work, he is
unable to obtain any suitable work." G. L. c. 151A,
§ 1(*r*)(2), as appearing in St. 1951, c. 763, § 1. "Remunera-
tion" is defined for the purposes of § 1(*r*) in G. L. c. 151A,
§ 1(*r*)(3), as amended through St. 1976, c. 473, § 3, which
states that "[r]emuneration shall be deemed to have been
received in such week or weeks in which it was earned or for
such week or weeks . . . to which it can reasonably be con-
sidered to apply."

Fitzgerald performed no wage-earning services during at
least certain weeks in the period in question.[4]   The question
then is whether she is deemed to have received remunera-
tion in any week during the period in question.   Because
under G. L. c. 71, § 40, a public day school teacher's com-
pensation is treated as earned during the time when school
is in session, Fitzgerald did not earn any compensation after
June 23.   Nor did she earn any remuneration after that
date, assuming that "remuneration" (defined as "any con-
sideration" [G. L. c. 151A, § 1(*r*)(3)]) is broader in concept
than "compensation."   All her remuneration was earned
when she concluded her teaching duties.   We see no basis
for concluding that Fitzgerald's remuneration "can
reasonably be considered to apply" to any week after June

---

[3] Other language in G. L. c. 71, § 40, makes it clear that the words
"school year" used in § 40, refer to the period during which school is in
session.   General Laws c. 29, § 31, having to do with salaries paid by the
Commonwealth, has no bearing on this case.

[4] The hearing was held in August, 1981.   At that time she had been
unemployed since June 23.

23, 1981. Even if she decided to be paid in twenty-six instalments and even if she elected insurance coverage (toward which the school committee contributed) throughout the year of the collective bargaining agreement, the remuneration would not reasonably be considered to apply to weeks between June 23 and September 1. The test is not in what week the remuneration is received but in what week it is earned or to which it may reasonably be considered to apply. The fact that Fitzgerald might have been recalled to work in the next school year does not prevent her from being in total unemployment. See *Director of the Div. of Employment Sec.* v. *Fitzgerald*, 382 Mass. 159, 163-164 (1980) (employee on maternity leave eligible for benefits).

Our decision that Fitzgerald was not ineligible for employment compensation is supported, at least inferentially, by the provisions of G. L. c. 151A, § 28A(*a*), as appearing in St. 1977, c. 720, § 29. A teacher who worked in one school year and has "a reasonable assurance" of working as a teacher in the next school year is not entitled to unemployment compensation during the summer months. *Id.*[5] If the Legislature has concluded that one who has a reasonable assurance of working in the next school year is not entitled to unemployment compensation during the summer, the inference may fairly be drawn that the Legislature intended that a person who has no such assurance is entitled to unemployment compensation during the summer weeks following the end of school sessions for the year. If the Legislature had intended that a teacher with no reasonable assurance of employment in the next school year should be ineligible for

---

[5] We reached the same conclusion in a case arising prior to the effective date of the 1977 amendment of G. L. c. 151A, § 28A(*a*). *Cusack* v. *Director of the Div. of Employment Sec.*, 376 Mass. 96, 99 (1978). For a case where claimants were ineligible for benefits because there was such "reasonable assurance," see *August* v. *Director of the Div. of Employment Sec.*, 386 Mass. 826, 829 (1982).

unemployment compensation until the commencement of the next school year, it could have said so.[6]

*Judgment affirmed.*

---

[6] The school committee argues that it is inappropriate to permit persons such as Fitzgerald to be eligible for unemployment compensation benefits during the summer months because school committees are obliged, in many instances, to send lay-off notices to protect against the possibility of insufficient appropriations. It states that many teachers who receive such notices are in fact rehired when the amount of available appropriations becomes known. It argues that it is illogical for a teacher who receives such a notice to be eligible for unemployment compensation when teachers who receive no notices are ineligible.

We believe the result we have reached is dictated by the applicable statutes. Of course, the Legislature may conclude that the school committee's argument is of sufficient merit to justify some statutory change.