549 S.W.2d 267 (1977)
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Appellant,
v.
FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS, Appellee.
No. 76-110.
Supreme Court of Arkansas, In Banc.
April 4, 1977.
Smith, Williams, Friday, Eldredge & Clark by William H. Sutton and Joseph E. Kilpatrick, Jr., Little Rock, for appellant.
Bailey, Trimble & Holt by R. Eugene Bailey, Little Rock, for appellee.
GEORGE ROSE SMITH, Justice.
In this dispute between two casualty insurance companies, the narrow issue is whether an exclusion in the appellee's policy deprived an unnamed insured of liability coverage for bodily injury sustained by an employee of the named insured. The decision turns upon the meaning of the word "insured" in the policy. This appeal is from a summary judgment holding that the unnamed insured was excluded from liability protection. We cannot agree with that interpretation of the policy.
All the facts are stipulated, the parties having agreed that there is no factual question to be decided, the sole issue being the meaning of the exclusion just mentioned.
Farm Mutual issued the policy to be interpreted, a policy of automobile liability insurance covering trucks owned by the named insured, Jim Dixon. The policy provided, in a paragraph entitled "Definition of Insured," that "the unqualified word `insured' means the named insured and, if the named insured is an individual, his spouse, and also any person while using the automobile..., provided the actual use of the automobile is by the named insured or spouse or with permission of either." The privotal exclusion provides that the coverage now involved does not apply to "bodily injury to any employee of the insured." (Our italics.) The decision turns upon whether the reference to the insured is restricted to the named insured, Dixon.
The facts are really not important. The insured vehicle, Dixon's truck, had been *268 driven by Dixon's employee, W. D. Kissire, to Arkansas Kraft's plant at Morrilton. Arkansas Kraft's employee, T. C. Lee, admittedly with Dixon's permission, was "using" the truck in the process of unloading it. In that process Dixon's employee, Kissire, was injured. Farm Mutual denied liability, on the ground that the exclusion means that there was no coverage for bodily injury to an employee of Dixon, the named insured. Arkansas Kraft's excess insurer, the appellant, contended that there was coverage for Arkansas Kraft, because Kissire was not its employee, so that Arkansas Kraft was protected against liability for Kissire's injury. The appellant settled with Kissire and brought this suit against Farm Mutual for reimbursement.
The decisions elsewhere are of scant assistance, for as an A.L.R. annotation points out: "On this question the courts appear to be in hopeless conflict, with some holding the exclusion inapplicable where the injured person was an employee of the named insured and an additional insured was the party seeking protection under the policy, and other courts taking a contrary position." Annotation, 48 A.L.R.3d 13, 25 (1973). Courts that apply the exclusion to injuries to the named insured's employees often do so on the ground that the exclusion is apparently meant to apply to injuries already covered by the insured's workmen's compensation insurance, which is not the situation when an additional insured, such as Arkansas Kraft, is concerned.
In aligning ourselves with those courts which hold that coverage is provided for an unnamed insured when the injured person is the named insured's employee, we need not look beyond the basic rule that an insurance policy is to be construed strictly against the insurer. Here Farm Mutual's policy flatly states in its definition that the unqualified word "insured" means not only the named insured but also any person using the vehicle with his permission. The pivotal exclusion uses the unqualified word "insured"; so Arkansas Kraft is presumably included. In drafting the policy Farm Mutual was certainly on notice, from conflicting judicial interpretations, that the limited reference was so ambiguous as to be open to contradictory interpretations. Elsewhere in the policy Farm Mutual referred to the "named insured" no fewer than 28 times, with the evident intention of excluding persons who would otherwise fall within its broad definition of "the insured." It would have been so simple for the draftsman of the policy to use the phrase "named insured" a 29th time, had that been his intention, that we are unwilling to say that he accomplished the same result by his bare reference to "the insured."
Reversed and remanded for the entry of judgment in favor of the appellant.
HOLT and ROY, JJ., not participating.
HICKMAN, J., and GEORGE HOWARD and JAMES C. LUKER, Special Justices, dissent.
GEORGE HOWARD, Jr., Special Justice, concurring and dissenting.
I concur in the reversal of the trial court's judgment in behalf of Farm Bureau Mutual Insurance Company of Arkansas, but I dissent to remanding the case for entry of judgment in favor of appellant, Employers Mutual Liability Insurance Company of Wisconsin. I believe the case should be remanded for trial in order to develop fully the unresolved factual issues readily apparent facially from the stipulation of the facts between the parties.
It is true the parties concluded the alleged stipulation by asserting "As there is no factual question to be decided, the sole question to be determined by the Court is that of whether exclusion (d) above negated coverage to Arkansas Kraft and its employee, Thomas Lee, for injuries sustained by Drew Kissire, an employee of Jim Dixon." However, it is incumbent upon the trial court, in considering a motion for summary judgment, to search the record in order to determine if there is only an issue of law involved.
Other than the date of the accident in which Wallace Kissire sustained his injuries and the admission that Kissire was an employee *269 of Jim Dixon, the stipulation cast a cloud of doubt, indeed it is so arguable, as to whether Kissire's injuries were proximately caused by the negligence of Thomas C. Lee, employee of Arkansas Kraft Corporation, and further, whether Lee had permission from Jim Dixon to use Dixon's vehicle as an employee of Arkansas Kraft Corporation, or was merely a borrowed employee.
This Court has emphasized that one of the objects of the motion for summary judgment is to dispose of litigation on motion where the facts are not disputed and the law can be applied to them. Ashley v. Eisele, 247 Ark. 281, 445 S.W.2d 76.
In Aetna Life Insurance Company v. Spencer, 182 Ark. 496, 32 S.W.2d 310 this Court held:
"Contracts of insurance should receive a reasonable construction so as to effectuate the purposes for which they are made. In cases where the language used is ambiguous, it should be construed in favor of the insured because the policy is written on forms prepared by the insurer. Of course, legal effect should be given to all the language used, and the object to be accomplished by the contract should be considered in interpreting it." (Emphasis Added)
What the contracting parties intend and the purposes to be accomplished are not covered by the stipulation. Moreover the record is void of any expression from Jim Dixon, Farm Bureau's insured, as to his understanding of the scope and coverage of the policy involved.
It is well established that the rule that insurance contracts are to be construed against the insurer is purely a rule of construction which comes into play as an aid to construction only when, after using all other effort to ascertain the intention of the parties, the contract is yet ambiguous as to which of two things was intended  one favorable to the insurer and the other to the insured. It is not at all a rule to be used in seeking a meaning favorable to the insured. It is the last straw moving the scale which has been left uncertain by an ambiguity. Aetna Life Insurance Company v. Spencer, supra; See Also: Gulf Refining Insurance Co., et al v. Home Indemnity Co. of New York, 78 F.2d 842.
For the reasons discussed above, I would remand this case for trial in order to develop the unsettled issues of fact involved.
JAMES C. LUKER, Special Justice, dissenting.
The question before us is the interpretation to be placed upon the words "the insured" as used in exclusion (d) of Farm Bureau's policy, which exclusion provides that there is no coverage for "bodily injury to any employee of the insured." (Emphasis added)
Lengthy annotations at 50 A.L.R.2d 78 (1956) and 48 A.L.R.3d 13 (1973) report decisions from State and Federal Courts in over thirty states. As the majority opinion points out, these Courts are "in hopeless conflict". Two United States District Courts have been called upon to anticipate what Arkansas Courts would do when presented with this question, and have reached opposite conclusions. See Curran v. Security Insurance Company, 195 F.Supp. 562 (W.D.Ark.1961) finding that the exclusion was not applicable to prevent coverage for an additional insured for injuries to an employee of the named insured; and Employers Mutual Liability Insurance Company v. Houston Fire and Casualty Insurance Company, 194 F.Supp. 828 (W.D.La. 1961) finding that the exclusion negated coverage for an omnibus insured where the injured party was an employee of the named insured.
The majority reaches its decision by applying the long standing rule of liberal construction in favor of an insured. But, in this case, since the parties to this action are both insurance carriers, which is entitled to the benefit of the rule? In my opinion, it is neither, and we should look to the intentions of Jim Dixon when he obtained the automobile liability policy issued by Farm Bureau.
*270 As is pointed out in the dissenting opinion of Special Associate Justice Howard, contracts of insurance should receive a reasonable construction so as to effectuate the purpose for which they are made and the object to be accomplished. Aetna Life Insurance Company v. Spencer, 182 Ark. 496, 38 S.W.2d 310. Employers v. Houston, supra, quotes extensively from American Fidelity and Casualty Company v. St. Paul-Mercury Indemnity Company, 248 F.2d 509 (5th Cir. 1957) which reasoned that:
"A business assured, like Osborne, has two primary fields of exposure: (1) to employees; and (2) to third parties, members of the public and persons not in the status of employees. The two present different hazards of frequency and severity and traditionally are underwritten separately. The first group is cared for by Employers Liability insurance which, includes as well, if applicable, state or federal workmen's compensation coverage. This insurance is carefully limited to persons in the status of employees and excludes all others. The second group is cared for by Public Liability coverage, either for general operations as Larsen's CGL policy, or specifically in connection with automobiles as in American's automobile policy. These invariably exclude employees of the assured and, to eliminate any doubts, exclude liabilities imposed under workmen's compensation acts. The obvious result is that the prudent business man obtains two types of insurance and, of course, pays two premiums.
"Since, for business men, if not for the general public, business and law have long abandoned the naive idea that the payment of losses are "free" to the assured, the purpose of an assured to integrate his program and reduce cost is thwarted if the policies, so carefully dovetailed, are construed to duplicate coverage. In this sense it is not a matter of the legal concept of liability (master-servant compared to third party), or the coincidence that an employee may be able to contrive a third party relationship on which to base a damage suit. The thing of importance is that for an injury received in the course of the named assured's employment, his employee is enabled to recover ultimately from the employer's Public Liability insurer (and hence him), the very kind of losses or damages which the assured has paid another to underwrite.
"Of course, these payments must ultimately come from somewhere, and it is the fact of business life that claims paid will, as they must, someday come from the assured's pocket.
"Since (the named insured) obtained and paid for Employers Liability coverage, is it likely that for injuries to these employees while in his service, he intended to provide and pay for more?"
It is my opinion that Employers v. Houston and American Fidelity v. St. Paul-Mercury, supra, reach the better result. In each, the Court was simply unable to believe that the named insured, the one who will ultimately pay the price, intended the result reached by the majority in the present case. Neither can I.
I would affirm the judgment of the Circuit Court.